UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CLARA MAE MARTIN,
              Plaintiff,

                                          Case No.  1:14-cv-1098

v.

                                          HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,
              Defendant.

_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Clara Mae Martin seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act. For the reasons stated below, the decision of the Commissioner will be **AFFIRMED**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years old at the time of the Administrative Law Judge's (ALJ) decision. (Tr. 10, 112).  She completed one year of college and was previously employed as a ward clerk. (Tr. 29-30). Plaintiff applied for benefits on February 23, 2011, due to arthritis, Sjogner's Disease[1], high blood pressure, and heart problems. (Tr. 163). Plaintiff's application was denied, after which she

---

[1] Sjogner's Disease, or Sjogner's Syndrome, "is a disorder of [the] immune system identified by its two most common symptoms—dry eyes and a dry mouth." *Sjogner's Syndrome*, MAYO CLINIC (July 8, 2014), http://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/basics/definition/CON-20020275.

requested a hearing before an ALJ. (Tr. 47, 54-56). On April 26, 2013,  Plaintiff appeared with her

counsel before ALJ Robert Senander with testimony being offered by Plaintiff. (Tr. 24).  In a written

decision dated May 8, 2013, the ALJ determined that Plaintiff was not disabled. (Tr.10-18). The

Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final

decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. §

405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 415.920(a-f).[2]  If the Commissioner can make a

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§

404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional

impairment as well as an exertional impairment, both are considered in determining the claimant's

residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The plaintiff has the burden of proving the existence and severity of limitations caused by

---

[2] 1.    An individual who is working and engaging in substantial gainful activity will not be found to be
     "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

   2.    An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §
     404.1520(c));

   3.    If an individual is not working and is suffering from a severe impairment which meets the
     durations requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P
     of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational
     factors (20 C.F.R. § 404.1520(d));

   4.    If an individual is capable of performing work he or she has done in the past, a finding of "not
     disabled" must be made (20 C.F.R. § 404.1520(e));

   5.    If an individual's impairment is so severe as to preclude the performance of past work, other
     factors including age, education, past work experience, and residual functional capacity must be
     considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Senander determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since her onset date of June 1, 2008 through March 31, 2012, the plaintiff's date last insured. (Tr. 15). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) fibromyalgia; (2) obesity; (3) degenerative joint disease of the knees; (4) hypertension; and (5) heart disease. (Tr. 15). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met the requirements of the Listing of Impairments. (Tr. 15-16). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity:

> to perform sedentary work involving: sitting up to 6 hours and standing and/or walking up to 2 hours in an 8-hour work day; in a work environment exclusive of: ladder, rope and scaffold climbing requirements and more than occasional: stair and ramp climbing, balancing, stooping, kneeling, crouching and crawling requirements (20 CFR 404.1567(a)).

(Tr. 16). The ALJ next determined that Plaintiff was not able to perform any of her past relevant work. (Tr. 17). At this point, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. Relying on the Medical-Vocational Guidelines, the ALJ found that Plaintiff retained the ability to perform a significant number of jobs. (Tr. 18). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

4

## DISCUSSION

Plaintiff claims the ALJ erred by misapplying the grids, failing to provide good reasons in rejecting the opinion of her treating physician, and discounting her credibility. (Dkt. #12, PageID 610). The Court will address the issues below.

### 1.      The ALJ Properly Relied on the Medical–Vocational Guidelines

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity; (2) age; (3) education; and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. At step five of the sequential process, the ALJ found Plaintiff not disabled pursuant to Rule 201.21 of the grids. (Tr. 18). Plaintiff argues that it was inappropriate for the ALJ to rely on the grids in this matter because she suffers from non-exertional impairments.

The medical-vocational guidelines only take into consideration a claimant's exertional (i.e., strength) limitations. Accordingly, where a claimant suffers from "nonexertional limitations that significantly restrict the range of available work," use of the grids alone to make a disability determination is inappropriate. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir.2008). As the Sixth Circuit observed:

> [W]here a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant

number of jobs exist in the national economy that a claimant can perform. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [his] exertional limitations.

*Id.* at 424 (internal citations omitted). With respect to whether he could resolve Plaintiff's application for benefits by relying solely on the grids, the ALJ, relying on Social Security Rulings 83–14 and 85–15, concluded that the non-exertional limitations Plaintiff experiences "had little or no effect on the occupational base of unskilled sedentary work. (Tr. 18).

Social Security Ruling 83-14 provides that where a claimant experiences nonexertional restrictions to avoid postural restrictions, such as those identified by the ALJ, [r]elatively few jobs in the national economy require ascending or descending ladders and scaffolding." Furthermore, "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)." Social Security Ruling 83-14, Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional & Nonexertional Impairments, 1983 WL 31254, at *2 (Soc. Sec. Admin., 1983).

Likewise, Social Security Ruling 85–15 provides that:

Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact ... [C]rawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).

6

Social Security Ruling 85–15, Titles II and XVI: Capability to do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *7 (Soc. Sec. Admin., 1985).

The ALJ's interpretation of these two Social Security Administration rulings is accurate and, therefore, constitutes "reliable evidence" that Plaintiff's nonexertional limitations do not significantly limit the range of sedentary work which she can perform. Accordingly, the ALJ properly relied on the grids to determine that Plaintiff was not entitled to benefits.

**2.     The Treating Physician Doctrine**

Plaintiff alleges that she is entitled to relief because the ALJ failed to properly assess the opinions expressed by Dr. Richard Moulton. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

On April 24, 2013, Dr. Moulton completed a fill-in-the blank report regarding Plaintiff's physical limitations. (Tr. 569-74). The ALJ did not address this report in his decision which Plaintiff argues entitles her to relief. The form Dr. Moulton completed expressly stated that "the limitations above are assumed to be your opinion regarding current limitations only." (Tr. 574). The form, however, also asked the doctor to provide a date when the limitations were first present if he could form an opinion within a reasonable degree of medical probability. Dr. Moulton left the form blank. (Tr. 574). Moreover, as Plaintiff admits, Dr. Moulton began treating plaintiff in the fall of 2012, after her date last insured in March 2012. (Tr. 558). Given the doctor's refusal to identify the date

on which the limitations were first present, it was not unreasonable for the ALJ to conclude that the limitations in question began as of the date the report was completed. As the report in question was completed well after the expiration of Plaintiff's insured status, it was not relevant to the consideration of whether Plaintiff was disabled prior to the expiration of her insured status. Accordingly, this claim is rejected.

### 3.      Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that she was impaired to a far greater extent than that recognized by the ALJ. Specifically, Plaintiff complained that she had "terrible" pain in both knees, such that she could only stand for five minutes before she would have to sit down. (Tr. 31). Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 Fed. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can

9

reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Social Security*, 540 Fed. App'x 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discussed the medical evidence in this case at length and discredited Plaintiff's

allegations because such were inconsistent with the medical record. While there is no dispute that Plaintiff experiences significant limitations as a result of her impairments, the ALJ's determination that Plaintiff is less limited than she alleges is supported by substantial evidence. This is demonstrated by a December 5, 2008 MRI that revealed "mild DJD without evidence of meniscal tear." (Tr. 265). After treatment, which included injections, Dr. Elliott Nipper noted she "is doing relatively well" and that Plaintiff felt "the injections are really helping her knee." (Tr. 260). A progress note from August 27, 2010, noted that she had "actually been doing pretty good." (Tr. 345). Dr. Holmes noted that while plaintiff had knee pain, the symptoms are alleviated by medication. (Tr. 334). While Plaintiff's condition may have deteriorated subsequent to the expiration of her insured status, the ALJ's assessment of Plaintiff's credibility relative to the time period prior to the expiration of her insured status is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated:  November 17, 2015                                /s/ Paul L. Maloney
                                                         PAUL L. MALONEY
                                                         United States District Judge

11